## Carlisle Deposit Bank & Trust Co. et al. v. Cumberland County Commissioners

*E. M. Biddle, Jr., Joseph P. McKeehan, F. J. Templeton, Myers & Myers, Samuel E. Basehore, F. B. Sellers, Jr.,* and *Omwake & Russell,* for plaintiffs.

*Addison M. Bowman, Jr.,* and *Ray T. Harrigan,* for defendants.

REESE, P. J., October 19, 1943.—In this proceeding we are asked for a declaratory judgment construing the provisions of the Act of May 21, 1943, P. L. 571, known as "The Fourth to Eighth Class County Assessment Law", which creates the machinery and procedure for making assessments for taxation in counties of the fourth, fifth, sixth, seventh, and eighth classes.

More particularly, we are asked to determine what, under the foregoing act, is the proper method and time for making assessments of the classes of personal property which, under the Act of June 17, 1913, P. L. 507, are made taxable annually for county purposes. To do this, we must particularly construe section 618 of the Act of 1943, supra, which provides:

"Section 618. Assessment of Personal Property.— Personal property subject to taxation for county purposes shall be assessed in the manner provided by existing laws, except that the county commissioners shall fix the date as of which the valuation of personal property shall be determined, when and to whom returns of taxable personal property shall be made, and when appeals from such assessments shall be heard in the same manner and with like notice and like periods of time as herein provided for appeals from assessments of real estate. All such personal property assessments shall be entered on the assessment rolls."

Defendants herein, the county commissioners, acting as the board of assessment and revision of taxes, construe the Act of 1943, and particularly section 618 thereof, as requiring that the assessment of personal property subject to taxation should be made in the same way and at the same time as the assessment of real estate; in other words, that all the provisions of the Act of 1943 relating to the assessment of real estate are made applicable to the assessment of personal property.

Sections 601 and 603 of the act provide that annually, on or before the first day of September, the chief assessor shall, from the returns made by local

assessors, prepare an assessment roll or list of persons and property subject to local taxation, together with, inter alia, the value of each tract of real estate, and the value of personal property of each owner subject to taxation.

Clearly, these provisions indicate that the work of the assessors in respect to real estate must be completed and the assessment thereof made before the first day of September preceding the year in which the tax is to be levied and paid. Defendants have taken the position that the assessment of taxable personal property must likewise be completed before the first day of September preceding the year in which the tax is to be levied and paid.

Accordingly, defendants, on or about August 1, 1943, caused to be sent to the taxpayers throughout the county demands for the submission of returns of taxable personal property for the purpose of levying a 'tax of four mills on the value of such personal property as of August 16, 1943, a date fixed by defendants under the authority of section 618. The taxpayers were required to file these returns at the office of defendants on or before August 31, 1943.

One of the questions for our determination can be disposed of at this point without difficulty. The blank forms sent to taxpayers as aforesaid indicated that the tax to be levied was for the calendar year ending December 31, 1943, and was to be collected at some time during 1944. As pointed out by plaintiffs herein and as is well known, the four-mill tax on personal property for county purposes for the year 1943 has already been assessed on the duplicate returns submitted by taxpayers in making their returns early in 1943 to the Department of Revenue in connection with the assessment, collection, and payment of the State personal property tax for the year 1943, as provided in the Act of July 11, 1941, P. L. 361. It follows that the county cannot again levy a four-mill tax for the

year 1943. This defendants admitted at the argument before us and also in public advertisements which appeared after the blank forms had been sent to the taxpayers. These advertisements clearly indicated that the tax based on the assessments made on the basis of taxpayers' returns during August 1943 would be levied during and for the year 1944. Hence, we can, without difficulty, adjudicate that no tax for the year 1943 can be validly levied on the assessments made on the basis of the returns demanded from taxpayers during August 1943.

The second question to be determined is whether or not the four-mill tax for county purposes for the year 1944 can be validly levied on the assessment made on the basis of the returns filed in August 1943. As already pointed out, defendants insist that the assessment must be made prior to the first day of September preceding the year during and for which the tax is levied. Plaintiffs, on the other hand, contend that the tax should be levied only on the basis of returns and assessments made during the same year in which and for which the tax is levied and that section 618 of the Act of 1943 should be and can be construed in complete harmony with that taxing procedure. Under the Act of June 17, 1913, P. L. 507, certain classes of personal property were made taxable "annually" for county purposes, and it was provided that the assessors should be "annually" furnished with blanks, copies of which should be distributed to the taxpayers, who should make return thereon "annually" of the aggregate amount of all the different classes of personal property made taxable by the act. After the passage of the act and until the Act of July 17, 1936, P. L. 51, amending the State Personal Property Tax Act of June 22, 1935, P. L. 414, it was the practice, certainly in this county, and we believe generally, to require the taxpayers to make their returns during the spring of the year in and for which the tax was levied and collected. In this way,

the taxpayer reported the items and value of taxable personal property owned by him as of a date early in the year in and for which the tax was levied and collected.

Under the amendment of the State Personal Property Tax Act, supra, the taxpayer, in submitting his return for the State tax, was required to submit a duplicate return, which was forwarded by the Department of Revenue to the proper county authorities to be used as a basis for assessing and levying the county tax. This system prevailed until and including the year 1943, the last year for the payment of the State tax. Under this procedure, likewise, the taxes, both State and county, were levied and collected and the assessments were made on the basis of returns reporting taxable personal property owned or held by the taxpayer during the year in and for which the taxes were imposed. Thus, under the procedure which has prevailed from the passage of the Act of 1913 to the present time, no taxpayer has been called upon to pay a tax on personal property which he had not owned or held at some time during the year in and for which the tax was imposed.

Under the construction placed upon the Act of 1943, supra, by defendants, the taxpayer would make return of his taxable personal property and the assessments would be made thereon prior to the first day of September preceding the year in and for which the tax would be imposed. It is at once apparent that under this procedure a taxpayer might pay a tax for and during a given year on personal property which he did not own or hold during any portion of that year. For example, Mrs. Elizabeth R. Bedford, in her lifetime (her executor is an intervening plaintiff), owned several annuities, subject to the tax on personal property. She died on August 24, 1943. Her executor was advised by a representative of defendants herein to file a return before August 31, 1943, showing the value

of these annuities as of August 16, 1943. Clearly, since Mrs. Bedford's death the annuities have no existence and yet, under the construction by the defendants of the Act of 1943, her estate would be compelled to pay a tax on the nonexistent annuities for and during 1944. Plaintiff banks are all acting as fiduciaries and, in their capacities as such, hold various securities, including mortgages. In several instances mortgages have been paid and satisfied or will be paid and satisfied before the end of the year 1943. Because such mortgages were held on August 16, 1943, they have been included in the returns, and presumably, under the contention of defendants, will be taxed for and during the year 1944. In such case, again, a taxpayer would be compelled to pay a tax on personal property not owned or held by him during the year in and for which the tax was imposed.

Is the Act of May 21, 1943, to be construed in a manner which will create such inequitable results? We do not think so. Under sections 51 and 52 of the Statutory Construction Act of May 28, 1937, P. L. 1019, the intention of the legislature may be ascertained by considering, inter alia, "former laws" and "the consequences of a particular interpretation", and the courts may be guided by the presumption, inter alia, that "the legislature does not intend a result that is absurd, impossible of execution or unreasonable". We must also remember that "common sense and practical everyday business experience are the best guides for those intrusted with the administration of tax laws": Harleigh Realty Company's Case, 299 Pa. 385, 390; and that "taxation statutes must be strictly construed in favor of the taxpayer": Girard Trust Company's Case, 343 Pa. 434, 435.

Under section 618 of the Act of 1943, it is provided that "personal property subject to taxation for county purposes shall be assessed in the manner provided by existing laws, except that the county commissioners

shall fix the date as of which the valuation of personal property shall be determined". The language, "in the manner provided by existing laws", certainly cannot be construed to mean "in the manner provided by this act for the assessment of real estate". If the legislature had so intended, it could easily have said so. The language used shows an intent to continue the method of return and assessment formerly used in the administration of the Act of 1913, except that the commissioners shall fix the date of valuation, rather than the Department of Revenue, by whom it was done during the time when the county tax was assessed on duplicate returns submitted to the department.

Section 618 also provides that the county commissioners shall determine "when appeals from such assessments [of personal property] shall be heard in the same manner and with like notice and like periods of time as herein provided for appeals from assessments of real estate". These provisions deal with appeals and not with the manner or time of making assessments. Nothing in these provisions requires that the appeals from assessments of personal property shall *coincide* in time with appeals from assessments of real estate. On the contrary, the only intent is that the procedure of, and periods for, appeal shall be similar in both personal and real property assessments.

The final provision of section 618 is that "all such personal property assessments shall be entered on the assessment rolls". On this provision defendants rely strongly, for, they contend, the assessment roll must, under section 601, be prepared on or before the first day of September and must show, inter alia, the value of the personal property of each owner subject to taxation. But we can see no objection to doing exactly what section 618 provides. The return by the taxpayer and the assessment of personal property can, as it always has been, be made early in the tax year, and the assessment "entered on the assessment rolls", to be followed

by the notice and the opportunity and period for appeal which is provided in the assessment of real estate.

We do not think that the legislature intended by section 618 to make the assessments of personal property identical and coincidental with the assessments of real property. If this had been the intent, section 618 would have so stated. Such an intent could have been found if section 618 had been omitted entirely, for the remaining provisions of the act seem to cover both real and personal property assessments. It is our opinion that section 618 indicates an intent to treat assessments of personal property differently from real estate assessments; an intent that the former should be made as they always have been made since the Act of 1913, but that as to appeals therefrom the notice, procedure, and periods of time should be similar to those provided for appeals from real estate assessments.

The Acts of June 27, 1939, P. L. 1199, June 21, 1939, P. L. 626, and June 26, 1931, P. L. 1379, provide for a system of assessments in first, second, and third class counties, respectively. Nothing in any of these acts indicates any intent that personal property assessments must be identical and coincide with real estate assessments. Indeed in section 11 of the Act of June 27, 1939, P. L. 1199, relating to assessments in first class counties, it is provided that "with regard to the assessment of personal property, the board and the personal property assessors shall have, as heretofore, all the duties provided in the act, approved the seventeenth day of June, one thousand nine hundred and thirteen (Pamphlet Laws, five hundred and seven)". It would be inconceivable to assume that the legislature intended, under the Act of 1943, a system of assessments for counties of the fourth to eighth classes which would result in a tax being imposed for and during a year in which the taxpayer did not own or hold the property, but intended no such result in the assessment systems provided for counties of the first, second, and third classes.

The Act of June 22, 1935, P. L. 414, imposed a tax for State purposes on corporate debts. Until amended by the Act of June 11, 1941, P. L. 361, the act provided that the tax for each year should be based on the report filed for the preceding year. Such a method was termed "unworkable" and the court felt obliged to "disregard or delete" the provisions requiring it: Commonwealth v. Erie Dry Goods Co., 50 Dauph. 411, 413; Commonwealth v. Chester County Light & Power Co., 48 Dauph. 1, affirmed in 339 Pa. 97; Commonwealth v. Budd Realty Corp., 345 Pa. 343. In the case last cited, it is pointed out at page 346 that, under the amendment of the act in 1941, "no doubt taking cognizance of the aforementioned decisions, it is for the first time levied the tax for given years on reports filed for the same years, which is the only workable method".

We feel that the only just, reasonable, and workable method to follow in personal property assessments is the one that has been used since 1913, viz, to require returns and to make assessments of the personal property made taxable by the Act of 1913, during the year in and for which the tax is levied. Only in this way can be avoided the unjust result of imposing a tax for a given year on personal property which is not owned or held by the taxpayer at any time during that year.

Finally, we wish to make it absolutely clear that the county commissioners, defendants herein, are entitled to no censure or criticism. In taking their position on this question they have tried to do their duty and to safeguard the interests of the county. The legislative intent was not explicitly clear, and if the commissioners had adopted the construction of the Act of 1943 which we now place upon it, and it had then been decided that the personal property assessments should have been made before the first day of September, the county would have lost the 1944 personal property tax. Under the course pursued by the commissioners and under our construction of the Act of 1943, no one will

be injured, the revenues of the county will not be impaired, nor will any taxpayer be prejudiced.

Accordingly, in view of the foregoing, we enter the following

*Declaratory judgment*

And now, October 19, 1943, it is hereby adjudged and decreed:

1. That no tax on personal property can be levied or collected for the year 1943 on the returns and assessments thereof made during the month of August 1943.

2. That no tax on personal property can be levied or collected for the year 1944 on the returns and assessments thereof made during August 1943, or at any other time during the year 1943.

3. That in imposing the personal property tax for 1944 and any subsequent year, the levy must be based on returns, valuations, and assessments made as of a date in the calendar year for which the tax is levied and collected.